NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ETISON LLC, D/B/A CLICKFUNNELS,**
*Plaintiff-Appellant*

**v.**

**HIGHLEVEL, INC.,**
*Defendant-Appellee*

---

2025-1711

---

Appeal from the United States District Court for the District of Delaware in No. 1:24-cv-00502-JCB, Judge Campbell J. Barker.

---

Decided:  July 2, 2026

---

JOHN HINTZ, FBT Gibbons LLP, New York, NY, argued for plaintiff-appellant.  Also represented by KEVIN J. CULLIGAN.

ROBERT SHAFFER, O'Melveny & Myers LLP, Washington, DC, argued for defendant-appellee.  Also represented by JONATHAN HACKER, KHANH NGUYEN LEON, BROOKE WILNER; JEFFERY D. BAXTER, TIMOTHY S. DURST, Dallas, TX.

---

Before LOURIE, CUNNINGHAM, and STARK, *Circuit Judges.*

STARK, *Circuit Judge.*

Etison LLC, d/b/a ClickFunnels ("ClickFunnels"), appeals a judgment of the District Court for the District of Delaware dismissing its patent infringement lawsuit for failure to state a claim.  The district court held that all claims of ClickFunnels' U.S. Patent Nos. 10,846,357 ("'357 patent") and 11,361,047 ("'047 patent") were invalid under Section 101 of the Patent Act.  We conclude that the district court erred by treating one claim as representative of all challenged claims.  Nevertheless, we agree with the district court that all of the claims are invalid, rendering any error harmless.  Therefore, we affirm.

I

A

ClickFunnels owns the '357 and '047 patents (together, the "patents-in-suit").  The patents-in-suit share a specification and title, "Website Creation System for Creating Websites Having At Least One Series of Directional Webpages and Related Methods."  J.A. 58 ('357 pat. at 1:1-4); J.A. 113 ('047 pat. at 1:1-4).[1]  The claimed invention generally "provide[s] a plurality [of] website templates" to facilitate website creation and enhance the experience of end users of those websites.  J.A. 23 ('357 pat. at Abstract).  More particularly, the specification explains that the patented technology enables business owners to use website templates to create digital sales "funnels" that are "designed to entice" potential customers and strategically "direct" them to purchase the products or services offered by the business.  J.A. 58-59 ('357 pat. at 2:60-3:16).  As further

---

[1]    We generally cite to the specification of the '357 patent throughout this opinion.

detailed in ClickFunnels' amended complaint ("Amended Complaint"):

> [T]he owner of the website can attract as many potential customers as possible for the products or services offered on that website (the broadest part of the funnel) and then, by using ClickFunnels technology, the website can provide the potential customers a series of directional webpages through which the potential customers can learn more about the product that is of interest to them (a narrower part of the funnel), the potential customers can purchase the products or services they know they already want (a still narrower part of the funnel), and the potential customers can be 'funneled' to different webpages on the website to encourage them to take other actions such as purchasing other products offered on the website (an even narrower part of the funnel).

J.A. 136-37 (Am. Cmplt. ¶ 27).

Claim 1 of the '357 patent, which the district court treated as representative, recites:

> A method, comprising:
>
> providing, to a user for display on a client device, via a website creation system, a user dashboard comprising a selectable option to create a website;
>
> receiving a selection of the selectable option to create a website;
>
> in response to receiving the selection of the selectable option to create a website, providing, to the user for display on the client device, a plurality of website types for selection;

receiving a selection of a website type of the plurality of website types,

wherein each website type of the plurality of website types comprises a series of directional webpages configured to cause an end user interaction with a website,

wherein the series of directional webpages of each website type of the plurality of websites types comprises a unique plurality of sequential webpages configured to be provided sequentially one after another;

in response to receiving the selection of a website type of the plurality of website types, providing, to the user for display on the client device, a plurality of website templates for selection, the plurality of website templates being particular to the selected website type;

receiving a selection of a website template of the plurality of website templates and the series of directional webpages of the selected website type;

in response to receiving the selection of a website template, generating and launching a generic website based on the selected website type and selected website template and providing, to the user for display on the client device, a website editor graphical user interface, the website editor graphical user interface comprising a plurality of webpage tabs, each webpage tab of the plurality of webpage tabs representing a webpage of the series of directional webpages;

> receiving at least one indication of a user interaction editing at least one webpage of the series of directional webpages; and

> in response to receiving the at least one indication of a user interaction editing at least one webpage of the series of directional webpages, editing the launched generic website to create a customized website.

J.A. 75 ('357 pat. at 35:51-36:27).

## B

In April 2024, ClickFunnels sued HighLevel, Inc. ("HighLevel") in the District of Delaware, alleging that HighLevel's software-as-a-service website platform infringes at least claim 1 of each of the patents-in-suit. After ClickFunnels filed its Amended Complaint, HighLevel moved to dismiss on the grounds that both patents claim ineligible subject matter under Section 101. In analyzing ClickFunnels' claims under the two-step test set out by the Supreme Court in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014), the district court accepted HighLevel's proposal to treat claim 1 of the '357 patent as representative of all 20 claims of each of the patents-in-suit. After oral argument, the district court determined at step one of the *Alice* test that the claims are directed to the abstract idea of "filtering information based on user preferences to arrive at a final result," and at step two that the claims add no inventive concept. J.A. 11, 15.

ClickFunnels timely appealed. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We review a district court's dismissal of a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure under the law of the applicable regional circuit. *See Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1345-46 (Fed. Cir. 2021). The Third Circuit reviews grants of a motion to dismiss de novo. *See Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021). "When reviewing a Rule 12(b)(6) motion, we accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Id.* To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"Patent eligibility under § 101 is a question of law based on underlying facts, so we review a district court's ultimate conclusion on patent eligibility de novo." *Universal*, 10 F.4th at 1346. "[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Under Section 101, we employ a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. At step one, we ask "whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* If so, we proceed to step two, where we "search for an inventive concept – i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (internal quota-

tion marks and alterations omitted). "[T]he mere recitation of a generic computer [in the claims] cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id*. at 223.

## III

ClickFunnels does not appeal the district court's *Alice* step one conclusion that the claims of the patents-in-suit are directed to the abstract idea of "filtering information based on user preferences to arrive at a final result." J.A. 11.    Instead, it raises two other challenges. First, ClickFunnels faults the district court's treatment of claim 1 of the '357 patent as representative of all claims of the patents-in-suit for the purposes of the Section 101 analysis.   Second, ClickFunnels argues that the district court should have concluded, at *Alice* step two, that the patents contain an inventive concept and, therefore, are not invalid. As we explain below, although the district court erred in its representativeness evaluation, this error was harmless because the court's conclusions at step two were correct.

## A

In assessing a Section 101 motion to dismiss for failure to state a claim, "[c]ourts may treat a claim as representative" of some or all of the challenged claims of the asserted patents. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). In fact, "[d]istrict courts have discretion to *require* parties litigating Section 101 motions to identify representative claims and to articulate why (or why not) claims are representative." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 701 n.1 (Fed. Cir. 2023) (emphasis added). Designating claims as representative of others assists district courts by enabling them to limit the analysis of a Section 101 challenge to just the representative claims. *See Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d

1343, 1348 (Fed. Cir. 2014) (finding it "unnecessary" for "the district court to individually address every one of [the] claims" under Section 101 "because all the claims are 'substantially similar and linked to the same abstract idea'"). The alternative – conducting a separate *Alice* analysis for each challenged claim of every asserted patent – could threaten to overwhelm a district court and bring the litigation to a halt at its very earliest stage.

The efficiencies made possible by representative claim analysis, however, carry with them attendant risks. If the district court improperly restricts the number of claims it analyzes, and then extends its conclusions to other claims, it might mistakenly invalidate claims not specifically considered; or, alternatively, it could wrongfully strip a patent challenger of a claim-specific defense. Thus, as we have previously observed and now reiterate, "it is important for courts to resolve any disputes over representativeness and clearly state which claims are, and are not, adequately represented by others." *Mobile Acuity*, 110 F.4th at 1291.

"Limiting the analysis of a § 101 challenge to representative claims is proper when the claims at issue are substantially similar and linked to the same ineligible concept." *Id.* at 1290 (internal quotation marks omitted). Once a patent challenger makes a prima facie showing that these criteria are satisfied, "the burden shifts to the patent owner to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Id.* ("[A] district court may treat a claim as representative . . . if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim. . . .") (internal quotation marks omitted). If the patent owner succeeds in making such a showing, it follows that the claims containing the distinctive limitation fall outside the representative claim's umbrella and must be separately evaluated.

Here, it is undisputed that HighLevel made a prima facie showing that claim 1 of the '357 patent is representative of all the claims of both patents-in-suit; i.e., that all the claims are substantially similar and are directed to the same abstract idea ("filtering information based on user preferences to arrive at a final result"). This showing shifted the burden to ClickFunnels to present a non-frivolous argument as to why claim 1 could not fairly be treated as a proxy for the other claims.

In its effort to meet this burden, ClickFunnels drew the district court's attention to dependent claim 13 of the '357 patent and dependent claim 16 of the '047 patent, each of which recites the use of "one or more triggers."[2] J.A. 76 ('357 pat. at 37:59-62) ("The system of claim 12, wherein the website editor graphical user interface includes an automation tab for creating one or more triggers and at least one event that results from the one or more triggers."); J.A. 131 ('047 pat. at 38:6-9) ("The website management system of claim 15, wherein the website editor graphical user interface comprises an automation tab for creating one or more triggers and for defining at least one event that results from the one or more triggers being triggered by an end user."). ClickFunnels pointed out that this "one or more triggers" limitation is not present in the purportedly representative claim 1 of the '357 patent. *See Etison LLC v. HighLevel, Inc.*, C.A. No. 24-502 D.I. 24 at 10 (D. Del.). Beyond making this observation, however, ClickFunnels provided no real argument to the district court as to why this limitation is of distinctive significance. *See id.* ("Claim 1 of the '357 patent is not representative at least because it

---

[2]    ClickFunnels does not dispute that claim 1 of the '357 patent is representative of all the claims of the patents-in-suit other than the two containing the "one or more triggers" limitations.

does not include the limitations of Claim 13 of the '357 patent and Claim 16 of the '047 patent of 'one or more triggers and at least one event that results from the one or more triggers.'") (internal citations omitted).[3]

HighLevel's reply was equally terse. It offered nothing more than a simple denial that ClickFunnels' "one or more triggers" limitation was of distinctive significance. *Etison LLC v. HighLevel, Inc.*, C.A. No. 24-502 D.I. 28 at 6 (D. Del.). Rather than explain why ClickFunnels' position was frivolous, HighLevel pivoted to the *Alice* test, arguing that "[t]o the extent that the Court finds that claims 13 and 16 are distinctive from claim 1 (they are not), HighLevel has already shown that these claims are similarly unpatentable, and that is unrebutted. At bottom, claims 13 and 16 do not change the focus of the abstract idea over representative claim 1, and further add no articulated inventive concept." *Id.* (internal citation omitted).

The district court did not engage with the merits of the dispute any more searchingly than the parties.[4] Instead, after observing that the two patents-in-suit share a specification, are directed to the same invention, and have identical claim structures (three independent and seventeen dependent claims), the court stated, without explanation,

---

[3]    The district court briefs on the motion to dismiss are not in the joint appendix but are available on the district court's docket. *See Etison LLC v. HighLevel, Inc.*, C.A. No. 24-502 D.I. 14, 24, 28 (D. Del.).

[4]    In this case, the parties provided the district court a total of just four pages of briefing on the representative claim dispute. This minimal attention understandably impacted the court's treatment of the issue. District courts retain discretion to require more fulsome briefing. Alternatively, courts may choose to undertake *Alice* analyses for only those claims that are adequately briefed.

that ClickFunnels "failed to provide any nonfrivolous argument as to why claim 1 of the '357 patent is not representative." J.A. 6-7.

This was error. ClickFunnels' identification of the "one or more triggers" limitation, present in claim 13 of the '357 patent and claim 16 of the '047 patent but not in the proffered representative claim, was not shown by HighLevel to be frivolous. And the district court's remarks that the patents-in-suit are nearly identical was not responsive to ClickFunnels' invocation of the "one or more triggers" limitation and did not address whether these claims were adequately represented by claim 1, which lacks that limitation.

The district court's error, however, was harmless. This is because the court proceeded to, in effect, evaluate the "one or more triggers" limitation under step two of the *Alice* test. J.A. 6 (considering whether the "one or more triggers" limitations "only introduce conventional computer activities") (internal quotation marks omitted). And its conclusion at step two was (as we will explain) correct: the "one or more triggers" limitation does not add an inventive concept.

The value of representative claim analysis is that it allows the court to reduce the number of claims it must scrutinize under the *Alice* test. Because, here, the district court went on to apply the *Alice* test to claims 13 and 16 anyway – even after erroneously deeming claim 1 of the '357 patent to be representative of all claims – and we agree with that analysis, its error in finding ClickFunnels' argument frivolous resulted in no prejudice and is, therefore, harmless. *See Mobile Acuity*, 110 F.4th at 1292 (finding representativeness challenge "unavailing" where "district court also expressly addressed the eligibility" of purportedly unrepresented claims); *see also Berkheimer*, 881 F.3d at 1365 n.1 ("Though the district court stated it was treating claim 1

as representative, it separately analyzed the dependent claims.").

B

That brings us to the district court's step two analysis. At step two, "[w]e look to see whether there are any 'additional features' in the claims that constitute an 'inventive concept,' thereby rendering the claims eligible for patenting even if they are directed to an abstract idea." *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) (quoting *Alice*, 573 U.S. at 221). "Although *Alice* step two involves a question of law, it may also involve underlying factual determinations regarding whether claim limitations were well-understood, routine, and conventional." *Ollnova Techs. Ltd. v. ecobee Techs. ULC*, __ F.4th __, 2026 WL 1596936, at *9 (Fed. Cir. June 4, 2026) (internal quotation marks and citations omitted). Here, ClickFunnels does not identify any underlying fact dispute that would make it inappropriate to resolve step two on a motion to dismiss.[5]

---

[5]    The closest ClickFunnels came to identifying a factual dispute in front of the district court was a passing reference in its motion to dismiss opposition brief to the "question of fact" of whether sequential and directional webpages are conventional. *Etison LLC v. HighLevel, Inc.*, C.A. No. 24-502 D.I. 24 at 21 (D. Del.).  Neither in its brief nor at oral argument on the motion, however, did ClickFunnels argue that this question should defeat the motion. Its position was, rather, that the district court should decide step two in its favor. *See generally Sanderling*, 65 F.4th at 705 (noting patentee "failed . . . to timely identify, prior to the district court's ruling on the motion, any specific fact disputes").

The arguments ClickFunnels does make can be fairly summarized as: (1) the Amended Complaint plausibly alleges, and the patents-in-suit demonstrate, that the claims at issue recite an inventive concept; and (2) the district court failed to accept as true ClickFunnels' allegations and construe all reasonable inferences in its favor. We address these contentions in turn.

1

ClickFunnels contends its claims should survive because it "plausibly alleged in the Amended Complaint that the claimed features are not conventional because they provide technical advantages over prior systems and methods, and the claimed features are thus directed to inventive concepts." Open. Br. at 20. However, "conclusory allegations that the prior art lacked elements of the asserted claims are insufficient to demonstrate an inventive concept." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1366 (Fed. Cir. 2023). Thus, the Amended Complaint's conclusory declaration that "[t]he patents-in-suit . . . contain limitations that, individually and/or collectively, are directed to inventive concepts that were unconventional and not well known or routine," J.A. 136 (Am. Cmplt. ¶ 23), is not entitled to any weight in assessing the motion to dismiss. *See Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1358 (Fed. Cir. 2024) ("[G]eneralized assertions that factual considerations about the state of the art preclude a decision at the pleadings stage do not prevent . . . a dismissal.") (internal quotation marks and citation omitted).

ClickFunnels does somewhat better with its allegations that "[t]he patents-in-suit describe the technical solutions . . . for creating websites," such as by "enabl[ing] a user to create a website while working with a single system instead of multiple developers and systems . . . [which] reduces required processing power, memory, and communication resources needed to facilitate creating websites."

J.A. 134-35 (Am. Cmplt. ¶ 16).  The Amended Complaint goes on to allege that the "results" produced by this "technical solution" include "less data transfer and data bandwidth usage," "less required processing power and communication bandwidth," "static pages [that] save[] computing power," and potentially a "more appropriate system for mobile devices."  J.A. 134-36, 138 (Am. Cmplt. ¶¶ 19, 21, 32).  At bottom, ClickFunnels insists that the "conditional logic" and "ordered rules" built into the invention's templates – that is, the "funnel" system described in the patents-in-suit – "allow both the user's local computer and the remote server hosting the website to *use less computing power*."  J.A. 137-38, 140 (Am. Cmplt. ¶¶ 30, 38) (emphasis added).

The claims at issue here, however, do no such thing. "A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).  Here, the statements in ClickFunnels' specifications and Amended Complaint (summarized above) that seek to bring its claims within the "technical solution to a technical problem" rubric are, at best, conclusory.  Additionally, nothing in the claims, specifications, or the Amended Complaint provides necessary detail as to *how* to achieve the alleged improvement in computer functionality.  *See Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358 (Fed. Cir. 2023) (holding that "claims failed *Alice* step two" where "the specification and claims do not explain or show how the monitoring and storage is improved, except by using already existing computer and camera technology") (internal quotation marks omitted).

The claims here resemble others we have held to be invalid under Section 101 based on, at least in part, their consisting of nothing more than "functional, result-focused language." *GoTV*, 166 F.4th at 1067 ("In conducting the step-two inquiry, we have repeatedly emphasized that it is not sufficient, in order to pass muster, for a claim to use

functional, result-focused language or to encompass ordinary computers and networks to perform their ordinary functions in carrying out an abstract idea, . . . without going further to require a specific implementation to improve *how* those functions are carried out."); *US Pat. No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1379 (Fed. Cir. 2026) ("[T]he claims use result-oriented language with no specific implementation illustrating how to achieve the claimed results.").

Like the district court, then, we conclude that "the claims here are distinguishable from cases where an inventive concept has been found." J.A. 14. The district court's decision to analogize the patents-in-suit to similar claims we have evaluated, in what now amounts to a rich and elaborate corpus of Section 101 precedent, was entirely proper. More than a decade ago, we announced that "the decisional mechanism courts now apply [to Section 101 cases] is to examine earlier cases in which a similar or parallel descriptive nature can be seen," *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016), and we have consistently adhered to this "classic common law methodology" in our Section 101 jurisprudence in the years since, *In re Killian*, 45 F.4th 1373, 1383 (Fed. Cir. 2022).

Hence, the district court appropriately and persuasively analogized the present case to our decision in *Intellectual Ventures*, 850 F.3d at 1341-42 ("[T]he claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it. Our law demands more."). In that case, we found that "a series of generic computer components that merely restate their individual functions" – such as "organizing, mapping, identifying, defining, detecting, and modifying" – only "describe[d] the functions of the abstract idea itself, without particularity" and, thus, was "simply not enough under step two" to plausibly allege an inventive concept. *Id.* (in-

ternal quotation marks omitted).  Claim 1 of the '357 patent similarly recites "display[ing]" images, "configur[ing]" webpages, "receiving" user input, "generating and launching a generic website," and "editing" the webpage.  J.A. 75 ('357 pat. at 35:50-36:28).

ClickFunnels' remaining arguments do not alter our conclusion.  The Amended Complaint alleges that Click-Funnels' website-building platform operates "within a single system," J.A. 134 (Am. Cmplt. ¶¶ 14, 16) (quoting '357 pat. at 3:19; '047 pat. at 3:27), but ClickFunnels has made clear that this "everything under one roof" idea is "not the inventive concept," Oral Arg. at 29:24-40[6]; *see also* Reply Br. at 17 ("The phrase 'within a single system' is not the focus of the disclosure; the focus is on the advantages provided by 'at least one series of directional webpages.'"). ClickFunnels also alleged that "the claimed inventions provide an additional, distinct benefit in comparison to conventional systems because the claimed inventions may be a more appropriate system for mobile devices."  J.A. 136 (Am. Cmplt. ¶ 21) (internal quotation marks omitted). However, "a claim is not rendered patent eligible merely because the abstract idea is applied on a handheld device or using a mobile application." *Trinity Info Media*, 72 F.4th at 1367.

Accordingly, we agree with the district court that the Amended Complaint fails to plausibly allege that claim 1 of the '357 patent (and the claims it represents) recites an inventive concept sufficient to satisfy *Alice* step two.

2

We reach the same conclusion in connection with the step two analysis of claim 13 of the '357 patent and claim

---

[6]    *Available at* https://www.cafc.uscourts.gov/oral-arguments/25-171106032026.mp3.

16 of the '047 patent, which include the "one or more triggers" limitation. We agree with the district court that "these limitations only introduce conventional computer activities, namely, the triggering of an event in response to an action by a user." J.A. 6 (internal quotation marks and citation omitted).

Both of the "one or more triggers" claims recite that each "trigger" is achieved by "an automation tab." J.A. 76 ('357 pat. at 37:60); J.A. 131 ('047 pat. at 38:7-8). The Amended Complaint identifies these "trigger" limitations as part of what it describes as "[t]he second general aspect of the patents-in-suit," that is, "a user's experience with websites that are created using the technologies claimed in the patents-in-suit." J.A. 139 (Am. Cmplt. ¶ 35). Our precedent establishes that improving a user's experience, for instance by allowing a user to accomplish conventional tasks more quickly, is generally not inventive. *See Simio*, 983 F.3d at 1365 ("[T]he improved 'efficiency' and 'processing speed' [often] means the *user's* speed, not the computer's.") (emphasis added).

The Amended Complaint then describes an example of "triggering":

> [I]f a user visits a website, clicks on a certain product, but then takes no further action or exits the website, the ClickFunnels platform that uses the claimed inventions provides an automatic way to treat that as a 'trigger' which results in the website sending an email, text, or other type of communication to the user to remind the user to complete the purchase.

J.A. 140 (Am. Cmplt. ¶ 37). These triggered "response actions," according to the Amended Complaint, "enable automation of tasks resulting in the technical advantage of reduced computing time and use of computer resources." *Id.* (Am. Cmplt. ¶ 38).

As we have already explained, however, the patents-in-suit do not sufficiently articulate how to accomplish this purported improvement of reduced use of computer resources. Nor does ClickFunnels point us to any disclosure as to how this might be achieved using "one or more triggers." Thus, for the same reasons we have set out with respect to the step two analysis of claim 1 of the '357 patent, we again agree with the district court that claim 13 of the '357 patent and claim 16 of the '047 patent also lack an inventive concept and are, therefore, invalid.

### 3

Finally, ClickFunnels charges that "the district court impermissibly engaged in fact finding about the state of the art and relied on matters other than those contained in the Amended Complaint and the patents-in-suit." Open. Br. at 39. ClickFunnels specifically criticizes the following statements in the district court's opinion:

- "Directional and sequential webpages as well as website types and templates are all generic computer functions or data types."

- "Claim 1's reference to a website editor graphical user interface is also not inventive."

- "[A]ny improvement in computer function flows not from how directional and sequential webpages are combined. Rather, the improvement comes from the filtering of already-existing data structures upon the selection of a user."

J.A. 14; *see also* Open. Br. at 30-31.[7]

---

[7]    ClickFunnels additionally faults the district court for observing that "[a]s plaintiff itself admits, it 'does not

As ClickFunnels correctly observes, none of the foregoing statements are explicitly supported in the district court's opinion by a citation to the Amended Complaint or the patents-in-suit. These statements could, as a result, be misinterpreted as findings of fact that additionally fail to accept the Amended Complaint's allegations as true. That would, however, be a misreading of the district court's opinion.

We see no basis to credit ClickFunnels' speculation that the district court improperly based its decision on material outside the complaint and the patents-in-suit, including, allegedly, "the Court's own view of the state of the art." Open. Br. at 11. Instead, as we have observed, the district court was relying on our precedent, and particularly our holdings as to what may or may not constitute an inventive concept *as a matter of law*. While the district court could have been clearer about what it was doing – and more carefully shown that it credited the well-pleaded factual allegations of the Amended Complaint and read the patents in the light most favorable to ClickFunnels – ClickFunnels has failed to identify any reversible error.

IV

We have considered ClickFunnels' remaining arguments and find them unpersuasive. Accordingly, for the

---

claim to have invented webpages.'" J.A. 14. This is not a finding of fact or reliance on material outside of the pleadings. Rather, it is an identification of what is – and is not – disputed between the parties. Contrary to ClickFunnels' suggestion, therefore, the district court did not run afoul of the Third Circuit's admonition that "admissions by counsel at oral argument may not support dismissal under Rule 12(b)(6)." *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 197 (3d Cir. 2019).

foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED**